IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-210-FL

| | |
|---|---|
| TY DUTCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| ) | |
| KATHRYN EASTBURN, ) | |
| DA CAPO PRESS, L.L.C., and ) | |
| PERSEUS BOOKS, INC. ) | |
| d/b/a THE PERSEUS BOOK GROUP ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), [DE-8] and Plaintiff's motion to transfer venue [DE-18]. The parties have filed their respective responses and replies [DE-14, 20, & 22], and the motions are now ripe. Chief Judge Flanagan has referred the matter, pursuant to 28 U.S.C. § 636(b)(1), to the undersigned for a memorandum and recommendation on the pending motions. For the reasons that follow, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** and that Plaintiff's motion to transfer venue be **DENIED**.

**STATEMENT OF THE CASE**

On April 1, 2010, Plaintiff filed his complaint in Wake County Superior Court, and the action was subsequently removed to this court by Defendants on May 21, 2010 on the basis of diversity jurisdiction. On June 28, 2010, Defendants moved to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction. On August 6, 2010, Plaintiff filed a motion for change

of venue as an alternative to dismissal should the court find no basis for personal jurisdiction over one or more Defendants.

## STATEMENT OF THE FACTS

Plaintiff, Ty Dutcher, is a citizen and resident of North Carolina. Defendant Kathryn Eastburn, is a resident of Colorado but was living in Texas when the action was filed. Perseus Books Group ("Perseus") is a Delaware entity with its principal place of business in New York and is the holding company for Da Capo Press, L.L.C. Da Capo Press, L.L.C. ("Da Capo") is a New York entity with its principal place of business in Massachusetts.

Eastburn authored a book entitled "Simon Says: A True Story of Boys, Guns and Murder" ("*Simon Says*"), a 283-page work of nonfiction depicting the 2001 New Year's Day murders of Carl and Joanna Dutcher, Plaintiff's parents, and Tony Dutcher, Plaintiff's nephew. Perseus and Da Capo (collectively, "the Publishers") published *Simon Says* in 2007. Three people were convicted of the murders, which occurred in Colorado, and Plaintiff was never a suspect or person of interest.

*Simon Says* contains nine total references to Plaintiff, including the following which are material to this action:

(1) "Youngest son, Ty, who lived in Georgia now, had racked up convictions for drugs, robbery, and uncounted numbers of traffic offenses."

(2) "He'd [Ty Dutcher] spent enough time in jail to make law enforcement officials like [Sheriff] Wegener well aware of his presence whenever he came west for a visit."

(3) "Ty called the sheriff's office to complain and register his voice. He introduced himself as a reformed drug addict."

(4) "Simon kept one dark eye focused on the racist, drug-dealing Dutchers . . . ."

Pl.'s Compl. ¶ 13 [DE-1-1]. Plaintiff has never been convicted of drug dealing or robbery, has had some traffic violations, but not "uncounted numbers," and denies all the negative claims made about him in *Simon Says*. *Id*.

Prior to the publication of *Simon Says*, neither the author nor the publishers contacted Plaintiff in order to verify the factual representations directly concerning him or consulted public records to confirm the alleged convictions. *Simon Says* was distributed throughout the United States, including in North Carolina and Wake County. After publication, Plaintiff's wife notified Defendants of the alleged errors it contained, but Defendants ignored these concerns. Defendants, thereafter, re-published *Simon Says* for distribution overseas. Plaintiff's friends saw the book in bookstores in England and copies were also located in South Africa. Defendants have refused to recall the books and replace them with corrected versions or to inform purchasers or the public at large of the allegedly false statements contained in the book.

Da Capo publishes about 100 books a year. The Publishers, over a number of years, have published four books by authors living in North Carolina, two of which have subject matter related to North Carolina. A total of 10,274 copies of *Simon Says* were published, 2,678 copies were sold nationwide, and 14 copies were sold in North Carolina. No marketing activities for *Simon Says* were directed to the North Carolina market. Neither Perseus nor Da Capo is registered to do business in North Carolina, maintain offices or employees in North Carolina, owns property in North Carolina, or maintain bank accounts in North Carolina.

## DISCUSSION

I. **Motion to Dismiss for Lack of Personal Jurisdiction**

   A. **Standard**

3

When faced with a Rule 12(b)(2) motion, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. *Manley v. Air Canada*, No. 5:10-cv-336-FL, 2010 WL 4852365, at *2 (Flanagan, C.J.) (E.D.N.C. Nov. 29, 2010) (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)). "However, where the court does not conduct an evidentiary hearing and relies instead only on the pleadings and affidavits alone, plaintiff need only make a prima facie showing of jurisdiction." *Id*. (citing *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)). "In adjudicating the motion, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction." *Id*. (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).

**B. Analysis**

Defendants contend that the exercise of personal jurisdiction over them would not comport with constitutional due process. Plaintiff contends that Defendants have sufficient minimum contacts with North Carolina to sustain this court's exercise of personal jurisdiction over these out-of-state Defendants.

"This court may exercise personal jurisdiction over a non-resident defendant only in the manner provided for by North Carolina law and only to the extent personal jurisdiction is consistent with constitutional due process." *Manley*, 2010 WL 4852365, at *2 (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). "Because North Carolina's long-arm statute is construed to extend jurisdiction to the full extent permitted by the Due Process Clause, the court here need only inquire into whether 'defendant has such minimal contacts with the forum state [of North Carolina] that maintenance of the suit does not offend traditional notions of fair play and

4

substantial justice.'" *Id*. (quoting *Christian Science Bd. of Directors v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). "Two different types of personal jurisdiction have been recognized by the courts: general jurisdiction and specific jurisdiction." *Id*. at *3 (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002)).

General jurisdiction "requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *Id*. (quoting *CFA Inst.*, 551 F.3d at 292 n.15). "[T]he defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan. Inc.*, 293 F.3d at 712. "The Fourth Circuit has cautioned that, given the expansion of specific jurisdiction, 'broad constructions of general jurisdiction [are] disfavored.'" *Manley*, 2010 WL 4852365, at *3 (quoting *Nichols*, 991 F.2d at 1200). The test, simply put, is "whether a defendant's contacts with the forum state are 'so extensive, systematic, and continuous that they approximate physical presence.'" *Id*. (quoting *Lab. Corp. of Am. Holdings v. Schumann*, 474 F.Supp.2d 758, 765 (M.D.N.C. 2006)). Specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *Id*. (quoting *CFA Inst.*, 551 F.3d at 292 n.15).

Because the contacts of a book's publishers must be evaluated separately from those of the authors, *Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp. 2d 585, 599 (M.D.N.C. 2008), the court will consider the personal jurisdiction question as to Eastburn and the Publishers in turn.

    1. **Kathryn Eastburn**

5

Defendants argue that Eastburn should not be subject to personal jurisdiction in North Carolina for the following reasons: she has never been a resident of North Carolina; she has only visited North Carolina once many years ago; she does not own any property in North Carolina; while conducting research for *Simon Says*, she never traveled to North Carolina and never interviewed anyone in North Carolina; she had no role in how or where *Simon Says* was marketed or sold and engaged in no marketing activities in North Carolina; and, as a general matter, she has never written a book directed toward a North Carolina audience. Decl. of Kathryn Eastburn ¶¶ 6-9 [DE-10]. Plaintiff argues that because Eastburn knew Plaintiff was a North Carolina citizen and, therefore, had knowledge that her written words would impact Plaintiff in the State of North Carolina, she is subject to personal jurisdiction in this state. The court disagrees.

### i. General Jurisdiction

There is no evidence of Eastburn having continuous and systematic contacts with North Carolina sufficient to support the exercise of general jurisdiction here. Mere authorship of a work published and sent to a state is insufficient to create general jurisdiction over the author in that state. *See Schumann*, 474 F. Supp. 2d at 765 (rejecting on grounds of fairness the idea that an author's work that is later published and sent to a state would create general jurisdiction over the author in that state). It is uncontradicted that Eastburn has had no recent contact whatsoever, and very little contact ever, with the forum state. *See* Eastburn Decl. ¶¶ 6-9. Accordingly, the Court finds that Eastburn is not subject to general jurisdiction in North Carolina.

### ii. Specific Jurisdiction

Plaintiff relies on *Calder v. Jones* in support of his argument that Eastburn is subject to specific jurisdiction in North Carolina because Plaintiff was injured in North Carolina by the

6

"effects" of Eastburn's conduct. 465 U.S. 783, 789-90. In *Calder*, Shirley Jones filed a libel suit in California against the National Enquirer, its president and editor, Calder, and the reporter, South, who wrote the article. *Id*. at 784. The article was written and edited in Florida, but was published in a national magazine with a wide circulation in California. *Id*. South and Calder, both Florida residents, challenged personal jurisdiction in California. *Id*. at 785-86. South frequently travelled to California on business, but did most of his research in Florida and called his sources in California for the information in the article. *Id*. at 785. Before the article was published, South called Jones at her home in California and read to her a draft of the article to solicit comment. *Id* at 785-86. Calder had only been to California twice and both trips were unrelated to the article on Jones. *Id*. at 786. He approved the subject of the article, edited it in its final form, and refused to print a retraction. *Id*. Calder had no other relevant contacts with California. *Id.* The Supreme Court found that both Calder and Jones were subject to jurisdiction in California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Id*. at 788-89 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (1980); Restatement (Second) of Conflicts of Law § 37). The Court recognized that the "mere fact that they can 'foresee' that the article will be circulated and have an effect in California is not sufficient for an assertion of jurisdiction[,]" but concluded that the actions of Calder and Jones were "intentional" and "expressly aimed at California" and that they "knew that the brunt of that

7

injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. at 789-90.

The present case is distinguishable from *Calder* on its facts. *Simon Says* is not a book about Plaintiff. It is not disputed that, in researching and writing *Simon Says*, Eastburn never visited or interviewed anyone in North Carolina, including Plaintiff. Crucial to the finding of personal jurisdiction in *Calder* was the fact that California was "the focal point *both* of the story and of the harm suffered." *Id*. at 789 (emphasis added). Here, the former is absent. Additionally, there is no indication that *Simon Says* was "expressly aimed" at North Carolina or that Eastburn intended or knew that *Simon Says* would have a "potentially devastating impact" on Plaintiff in North Carolina, both of which were factors cited by the Supreme Court in finding the exercise of personal jurisdiction appropriate in *Calder*. *Id*. at 789-90. Therefore, the court finds that Eastburn is not subject to specific jurisdiction in North Carolina.

Having found no basis upon which to exercise personal jurisdiction over Eastburn, it is **RECOMMENDED** that the motion to dismiss Eastburn for lack of personal jurisdiction be **GRANTED**.

### 2. Perseus and Da Capo

Defendants argue that the Publishers are not subject to personal jurisdiction in North Carolina because they have no employees or offices in North Carolina, do not own property or bank accounts in North Carolina, and are not registered to do business in North Carolina. Decl. of Biagio Vignolo ¶ 6 [DE-12]. Furthermore the Publishers allege that, since at least 2000, they have not published a book specifically directed at the North Carolina market, and they have not undertaken any marketing efforts aimed at North Carolina either generally or specifically to potential *Simon Says* readers. Decl. of Matty Goldberg ¶¶ 5-6 [DE-11].

Plaintiff asserts that the Publishers have "published, marketed, and sold numerous titles in North Carolina" and "solicited and contracted with various North Carolina authors." Pl.'s Resp. at 7 [DE-14]. Plaintiff further asserts that the Publishers have "repeatedly availed themselves to the laws of this State and 'have continuously and deliberately exploited' the North Carolina market." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984)). In support of these assertions, Plaintiff's attorney submitted a declaration regarding the following alleged activities of the Publishers: (1) that the Publishers and their agents marketed *Simon Says* throughout North Carolina, including libraries and bookstores; (2) that the Publishers and their agents marketed *Guilford Courthouse: North Carolina* throughout North Carolina, including libraries and bookstores, and that they entered into a contract with North Carolina resident author John Hairr to publish that book; (3) that the Publishers and their agents marketed *Moore's Historical Guide to the Battle of Bentonville* throughout North Carolina, including libraries and bookstores, and that they entered into a contract with North Carolina resident author Mark A. Moore to publish that book; (4) that the Publishers and their agents marketed *When I Married My Mother* throughout North Carolina, including libraries and bookstores, that they entered into a contract with North Carolina resident Jo Maeder to publish that book, and that Maeder's book was nominated for a North Carolina literary award in 2009; and (5) that the Publishers and their agents marketed *Rebels and Redcoats: The American Revolution* throughout North Carolina, including libraries and bookstores, and that they entered into a contract with North Carolina resident author George F. Sheer to publish that book. Decl. of John S. Austin ¶¶ 4-6 [DE-15]. In support of Austin's declaration are attached copies of internet search results showing *Simon Says* available for sale at Joseph Beth Bookseller's in Charlotte, North Carolina, the Regulator Bookstore in Durham, North Carolina, and Quail Ridge Books in Raleigh, North Carolina. *Id.*,

9

Ex. B. Also attached is a synopsis of *Simon Says* from the Barnes & Noble website, *id.*, Ex. C, copies of internet search results showing the other various titles referenced above, and specifically that John Hairr, Mark Moore, and George Scheer live in North Carolina, *id.* at Exs. D-G. Defendants characterize these allegations by Plaintiff as "nothing more than a handful of sporadic contacts with North Carolina, almost all of them dating back many years and none relating to [*Simon Says*]." Defs.' Reply at 1 [DE-20].

### i. General Jurisdiction

As discussed above, general jurisdiction "requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *Manley*, 2010 WL 4852365, at *3 (citations omitted). "Even 'continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation].'" *Id.* (quoting *Nichols*, 991 F.2d at 1199). The court does not believe that sufficient contacts exist to support general jurisdiction over the Publishers.

Even taking as true the Plaintiff's allegations that the Publishers published four works by North Carolina authors, two of which were of a subject matter related to North Carolina, those allegations are insufficient to establish the kind of continuous and systematic contact with North Carolina that would "approximate physical presence" of the Publishers in North Carolina. *Id.* (quoting *Schumann*, 474 F.Supp.2d at 765). The Scheer book was last reprinted in 1987, Austin Decl., Ex. G; the Maeder book was published in 2009, but appears to have no substantive connection to North Carolina other than the residence of the author, *id.*, Ex. F; the Moore Book was published in 1997, but does have a subject matter related to North Carolina, *id.*, Ex. E; and the Hairr book was published in 2002, but likewise has a subject matter related to North

10

Carolina, *id.*, Ex. D.

Plaintiff is entitled to have all reasonable inferences drawn in his favor. Therefore, the court will assume that because these four authors were alleged to live in North Carolina it necessarily means that the Publishers "solicited and contracted" with those authors in North Carolina. Even so, this handful of contacts over a more than 20 year period, and in the context of the 100 books per year published by Da Capo, does not rise to the level of continuous and systematic contacts required to support general jurisdiction, and the Fourth Circuit has declined to find general jurisdiction where similarly tenuous contacts existed. *See, e.g.*, *Nichols*, 991 F.2d 1195 at 1200 (no general jurisdiction over company that had previously employed 17-21 people in forum state, had previously held two regional and national meetings in the forum state, had previously contracted with a research company in the forum state, and had previously generated 2% of its sales from the forum state); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 746 (4th Cir. 1971) (no general jurisdiction over drug company that had no office in forum state, had five employees ("drug reps") living in forum state that promoted the company's products throughout the forum state, had applied and was authorized to do business in the forum state, and had appointed an agent for service of process in the forum state). *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984) (finding jurisdiction in forum state where Hustler sold 10 to 15,000 copies there per month, which evidenced continuous and deliberate exploitation of that market).

Furthermore, there is no evidence that the Publishers specifically directed any marketing activity toward North Carolina. These books simply being sold in North Carolina is not sufficient to establish personal jurisdiction without more. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994) ("To permit a state to assert jurisdiction over any person in

11

the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism.").

Accordingly, the court finds that the Publishers do not have the "continuous and systematic contacts" with North Carolina necessary to support the exercise of general jurisdiction.

### ii. Specific Jurisdiction

The court now turns to whether the Publishers' conduct directly related to this action has a sufficient connection with North Carolina to support specific jurisdiction. To establish specific jurisdiction, Plaintiff relies on the sales of *Simon Says* in North Carolina and alleges that the Publishers "repeatedly availed themselves to the laws of this state and have continuously and deliberately exploited the North Carolina market." Pl.'s Resp. at 7 (internal quotation omitted). As stated above, specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *Manley*, 2010 WL 4852365, at *3. "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that . . . contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Id*. at *5 (citation omitted).

A total of 10,274 copies of *Simon Says* were published, 2,678 copies were sold nationwide, and 14 copies were sold in North Carolina. There is no evidence to dispute that the Publishers directed no marketing activities for *Simon Says* specifically toward the North Carolina market. There is no evidence of phone calls or other contacts related to the writing or publication of *Simon Says* directed at the North Carolina market, and there is no evidence that Eastburn and the Publishers negotiated any contract regarding *Simon Says* in North Carolina. As explained above, the sale of a product in the forum state, without more, is not sufficient to

12

establish personal jurisdiction. *Lesnick*, 35 F.3d at 945. Additionally, as discussed with respect to Eastburn, there is no indication on the part of the Publishers that *Simon Says* was "expressly aimed" at North Carolina -- *Simon Says* is not a story about Plaintiff and the events recounted in the book did not take place in North Carolina -- or that the Publishers intended or knew that *Simon Says* would have a "potentially devastating impact" on Plaintiff in North Carolina. This distinguishes the present case from *Calder*, where the Supreme Court found that specific jurisdiction existed based on the fact that *both* the story published and the harm were aimed at the forum state. 465 U.S. 783, 789-90. Because the only relevant conduct on the part of the Publishers is the sale of *Simon Says* in North Carolina, and there is no evidence of additional conduct directed at North Carolina like that found in *Calder*, the court concludes that the Publishers' actions were not such that they should have anticipated being sued in this forum. Therefore, the court finds no basis for specific jurisdiction over the Publishers.

Having found no basis upon which to exercise personal jurisdiction over Perseus and Da Capo, it is **RECOMMENDED** that the motion to dismiss Perseus and Da Capo for lack of personal jurisdiction be **GRANTED**.

## II. Motion to Change Venue

Having found that Defendants are not subject to personal jurisdiction in North Carolina, the court next turns to Plaintiff's request to transfer venue to the District of Colorado.

### A. Standard

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to another district or division where the suit might have otherwise been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice." Nothing prevents a plaintiff from moving for transfer even though the plaintiff elected the forum in the first place. *See Ferens v. John Deere*

*Co.*, 494 U.S. 516, 518-19 (1990) (finding no error in allowing a plaintiff to bring a § 1404 motion "since a plaintiff always can sue in the favorable state court").

A district court may also transfer venue pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district [may,] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Fourth Circuit has held that § 1406(a) also "authorize[s] transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 255-56 (4th Cir. 2002) (citing *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988)); *Virginia Beach v. Roanoke River Basin Assoc.*, 776 F.2d 484, 488 (4th Cir. 1985) (holding that a defendant need not be dismissed for lack of personal jurisdiction where action could be transferred to a district that had jurisdiction); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Importantly, in order for an action to be transferred pursuant to either § 1404(a) or § 1406(a), the transferor court must determine that the transferee district is one in which the action *could have been brought initially*.

**B. Analysis**

Here, Plaintiff has requested that "[i]n the event the Court finds it does not have personal jurisdiction over one or more Defendant, Plaintiff, for the convenience of the parties and witnesses and in the interest of justice, move [sic] the case be transferred, pursuant to 28 U.S.C. § 1404 to the District of Colorado." Pl.'s Mot. at 5. Defendants object, and argue that "Plaintiff's motion is nothing more than a back-door attempt to get his claims into a forum that may actually have personal jurisdiction over all the Defendants." Defs.' Resp. at 1. However, the court need not reach the question of whether the District of Colorado would have personal

14

jurisdiction over all Defendants because the requirement inherent in both § 1404 and § 1406 that the transferee court be a court where suit could have initially been brought dictates that transfer of the instant action is barred pursuant to Colorado state law.

Plaintiff originally filed suit against the named Defendants on November 13, 2008 in North Carolina state court. That action was terminated by Plaintiff's voluntary dismissal, without prejudice, on September 18, 2009. However, this cause of action arose, at the very latest, on January 31, 2008 when Plaintiff discovered the publication of *Simon Says*, and the current suit filed in this Court was filed just over two years after that date. Compl. ¶ 6. Defendants point out that, "[o]n the day Plaintiff filed the current action in North Carolina, he could not have brought suit against Defendants on these claims in Colorado because the governing statute of limitations had expired." Defs.' Resp. at 5 (citing C.R.S.A. § 13 80-103) (establishing a one year statute of limitation for libel claims in Colorado).

Even were this Court to assume that the statute of limitations was tolled during the period of Plaintiff's first suit, from November 12, 2008 until September 18, 2009, approximately one year and four months would have elapsed between the accrual of the cause of action and Plaintiff's initiation of the second suit. Thus, the claims brought in the current suit would nonetheless be barred by the Colorado statute of limitations. Nor is Plaintiff's offer of the District of Colorado as a potential transferee court saved by Colorado's saving statute, which reads:

> (1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff . . . may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later, and the defendant may interpose any defense, counterclaim, or setoff which might have been interposed in the original action.

> (2) This section shall be applicable to all actions which are first commenced in a federal court as well as those first commenced in the courts of Colorado or of any other state.

C.R.S.A. §13-80-111. The Court reads this statute as not being applicable to the facts of the instant case, because here, the first action was not dismissed for lack of personal jurisdiction or improper venue as required by the statute, but voluntarily dismissed by Plaintiff.

Plaintiff could not have initially brought the instant action in the courts of the state of Colorado, and therefore transfer to the District of Colorado is not proper. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for change of venue pursuant to 28 U.S.C. § 1404 be **DENIED**.

## CONCLUSION

It is **RECOMMENDED** that Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) be **GRANTED** and that Plaintiff's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 1st day of March, 2011.

_____
DAVID W. DANIEL
United States Magistrate Judge