IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-210-FL

| | | |
|---|---|---|
| TY DUTCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KATHRYN EASTBURN; DA CAPO | ) | |
| PRESS, LLC; and PERSEUS BOOKS | ) | |
| INC., d/b/a The Perseus Book Group, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to dismiss for lack of personal jurisdiction (DE # 8) and plaintiff's motion to transfer venue (DE # 18). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge David W. Daniel entered a memorandum and recommendation ("M&R") as to these motions. The magistrate judge recommends that the court grant defendants' motion and deny plaintiff's. Plaintiff timely filed objection to the M&R, and defendants responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and dismisses this action for lack of personal jurisdiction.

**STATEMENT OF THE CASE**

Plaintiff initiated this defamation action in Wake County Superior Court on April 1, 2010. Plaintiff alleges that the nonfiction book *Simon Says: A True Story of Boys, Guns and Murder* ("*Simon Says*"), which depicts the murders of plaintiff's parents and nephew on New Year's Day 2001 by three teenagers in Colorado and was authored by defendant Kathryn Eastburn ("Eastburn"

or "the author") and published by defendants Da Capo Press, LLC ("Da Capo") and Perseus Books, Inc. ("Perseus," and with "Da Capo," "the Publishers"), contains a number of false and defamatory statements about him. Specifically, plaintiff alleges that the book (1) wrongly states that he has convictions for drugs, robbery, and uncounted traffic offenses; (2) wrongly states that he had spent significant time in jail and was known to law enforcement officials; (3) wrongly states that he introduced himself as a reformed drug addict; and (4) wrongly describes plaintiff and his family as racist drug dealers.[1]

Plaintiff's action was removed to this court by defendants on May 21, 2010, on the basis of diversity jurisdiction. On June 28, 2010, defendants moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Plaintiff responded in opposition on July 22, 2010. Defendants replied on August 6, 2010. Also on August 6, 2010, plaintiff moved pursuant to 28 U.S.C. § 1404 to transfer this action to Colorado in the event the court finds personal jurisdiction over defendants to be inappropriate in North Carolina. Defendants responded in opposition on August 30, 2010. Plaintiff did not reply.

## STATEMENT OF THE FACTS

The jurisdictional facts, in the light most favorable to plaintiff, are set forth as follows. Where the parties have not objected to this aspect of the magistrate judge's analysis, the court adopts his summary of the pertinent facts as follows:

> Plaintiff . . . is a citizen and resident of North Carolina. . . . Eastburn is a resident of Colorado but was living in Texas when the action was filed. Perseus . . . is a Delaware entity with its principal place of business in New York and is the holding

---

[1] Plaintiff was never a suspect or person of interest in the murders, and plaintiff does not allege that the book contends otherwise. Plaintiff's defamation claim is limited to the four statements described above. The court notes that plaintiff's name appears only nine times in the 283-page *Simon Says*.

company for Da Capo . . ., [which] is a New York entity with its principal place of business in Massachusetts.

\* \* \* \*

Prior to the publication of *Simon Says*, neither the author nor the publishers contacted [p]laintiff in order to verify the factual representations directly concerning him or consulted public records to confirm the alleged convictions. *Simon Says* was distributed throughout the United States, including in North Carolina and Wake County. After publication, [p]laintiff's wife notified [d]efendants of the alleged errors it contained, but [d]efendants ignored these concerns. Defendants, thereafter, re-published *Simon Says* for distribution overseas. Plaintiff's friends saw the book in bookstores in England and copies were also located in South Africa. Defendants have refused to recall the books and replace them with corrected versions or to inform purchasers or the public at large of the allegedly false statements contained in the book.

Da Capo publishes about 100 books a year. The Publishers, over a number of years, have published four books by authors living in North Carolina, two of which have subject matter related to North Carolina. A total of 10,274 copies of Simon Says were published, 2,678 copies were sold nationwide, and 14 copies were sold in North Carolina. No marketing activities for *Simon Says* were directed to the North Carolina market. Neither Perseus nor Da Capo is registered to do business in North Carolina, maintain offices or employees in North Carolina, owns property in North Carolina, or maintain bank accounts in North Carolina.

M&R at 2-3.

## DISCUSSION

A.  Standard of Review

When challenged by a Rule 12(b)(2) motion, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, where the court does not conduct an evidentiary hearing and relies instead on the pleadings and affidavits alone, plaintiff need only make a *prima facie* showing of jurisdiction. In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). In adjudicating the motion, the court construes all disputed facts and draws all reasonable inferences

3

from the proof in favor of jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

Here, defendants' motion comes to the court with benefit of the magistrate judge's thoughtful analysis. The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B. Analysis

This court may exercise personal jurisdiction over a non-resident defendant only in the manner provided for by North Carolina law and only to the extent personal jurisdiction is consistent with constitutional due process. See Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). Because North Carolina's long-arm statute is construed to extend jurisdiction to the full extent permitted by the Due Process Clause, the court here need only inquire into whether "defendant has such minimal contacts with the forum state [of North Carolina] that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Christian Science Bd. of Directors v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (internal quotation marks omitted).

Two different types of personal jurisdiction have been recognized by the courts: general jurisdiction and specific jurisdiction. See CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002). The former "requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." CFA Inst., 551 F.3d at 292 n.15. The latter "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Id.

1.  Eastburn

Plaintiff objects to the magistrate judge's application of Calder v. Jones, 465 U.S. 783 (1984), and his conclusion that the court lacks specific personal jurisdiction over Eastburn.[2] In Calder, "the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." Carefirst of Md., Inc., 334 F.3d at 397-98 (citing Calder, 465 U.S. at 789-90). As the Fourth Circuit has recognized, Calder's so-called "effects test"

> is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Id. at 398 n.7 (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 2001)).

---

[2] Plaintiff does not object to the magistrate judge's conclusion that the court lacks general personal jurisdiction over Eastburn. The magistrate judge's conclusion is not clearly erroneous, as there is no evidence that Eastburn had continuous and systematic contacts with this state.

5

In Calder, the Supreme Court was faced with an action by a California actress against the Florida author and editor of an allegedly libelous National Enquirer article. Although neither defendant had traveled to California to investigate the story, the Court found personal jurisdiction to be proper because

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

Calder, 465 U.S. at 788-89 (citations omitted). Rejecting an argument that neither the author nor the editor had control over the circulation of the National Enquirer, the court noted that they "edited an article that they knew would have a potentially devastating impact upon respondent" and that "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." Id. at 789-90.

Plaintiff contends that his action, which also contains allegations of defamation by an out-of-state author, is on all fours with Calder. The magistrate disagreed, concluding that this case was distinguishable from Calder because North Carolina was not the focal point of tortious activity, *Simon Says* was not expressly aimed at North Carolina, and there is no suggestion that Eastburn knew or intended to have an impact on plaintiff in North Carolina. In other words, the magistrate judge concluded that the third prong of Calder's effects test was not satisfied here.

Despite plaintiff's objection to the contrary, the court agrees with the magistrate judge's conclusion that Calder does not allow specific personal jurisdiction over Eastburn. Only fourteen

6

(14) of more than 10,000 published copies of *Simon Says* were sold in North Carolina, and no marketing activities were undertaken in this state. Plaintiff is mentioned only nine times in the book, which is about the murder of his parents and nephew in Colorado. Plaintiff has not alleged that the state of North Carolina is mentioned in *Simon Says*, and plaintiff appears to be only a peripheral character in the story that is told therein.[3]

In Young v. New Haven Advocate, the Fourth Circuit "emphasized how important it is in light of Calder to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." 315 F.3d at 262 (citing ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625-26 (4th Cir. 1997)). The court rejected as "sweeping [too] broadly" the argument that a court may find jurisdiction "simply because . . . [the plaintiff] would feel the effects of any libel in [the state] where he lives and works." Id. Instead, the defendant "must . . . manifest an intent to target and focus on [the forum's] readers." Id. at 263. Because Eastburn did not manifest an intent to target North Carolina readers, nor did she otherwise expressly aim her tortious conduct at North Carolina, the magistrate judge correctly concluded that personal jurisdiction was not appropriate in this state.

2. The Publishers

Plaintiff objects to the magistrate judge's conclusion that the court lacks both general personal jurisdiction and specific personal jurisdiction over the Publishers. Plaintiff believes that specific personal jurisdiction over the Publishers is available under Calder, largely for the same reasons that he believes that jurisdiction is proper over Eastburn. Plaintiff further submits that the

---

[3] Although plaintiff may be correct that Calder "does not stand for the proposition that the entire article must be about the defamed party" for personal jurisdiction to be appropriate, see Pl.'s Obj. at 8, the author must have "expressly aimed [her] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity," before she can be haled into court there. Carefirst of Md., Inc., 334 F.3d at 398 n.7.

7

court has general personal jurisdiction over the Publishers because they have published, marketed, and sold a variety of titles in North Carolina, and have contracted to publish the works of various North Carolina authors.

Although "the contacts of a book's publishers must be evaluated separately from those of the authors," Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 599 (M.D.N.C. 2008); see also McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300 (D.C. Cir. 1996), plaintiff's Calder argument for specific jurisdiction over Da Capo and Perseus is no stronger than his argument for jurisdiction over Eastburn. The court reiterates that *Simon Says* is about murders that occurred in Colorado, that only fourteen (14) copies of the book were sold in North Carolina, and that no marketing activities were undertaken in this state.

Although "[e]ven a single contact may be sufficient to create jurisdiction when the cause of action arises out of that . . . contact, provided that the principle of 'fair play and substantial justice' is not thereby offended," Carefirst of Md., 334 F.3d at 397, "[t]o permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994). The Publishers did not direct their activities at North Carolina "in more than a random, fortuitous, or attenuated way," see Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004), and specific personal jurisdiction is accordingly not appropriate.

Plaintiff's contention that general personal jurisdiction is appropriate likewise fails. "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing

specific jurisdiction." ALS Scan, Inc., 293 F.3d at 712. "[B]road constructions of general jurisdiction [are] disfavored," Nichols, 991 F.2d at 1200, and "[e]ven 'continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation].'" Id. at 1199 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 317 (1945)) (alterations in original). As this court recently noted, general jurisdiction is appropriate only where "a defendant's contacts with the forum state are 'so extensive, systematic, and continuous that they approximate physical presence.'" Manely v. Air Canada, --- F. Supp. 2d ----, 2010 WL 4852365, at *3 (E.D.N.C. 2010) (quoting Lab. Corp. of Am. Holdings v. Schumann, 474 F. Supp. 2d 758, 765 (M.D.N.C. 2006)).

The Publishers are not registered to do business in North Carolina, and do not maintain offices or employees in North Carolina, own property in North Carolina, or maintain bank accounts in North Carolina. They have published four books by authors living in North Carolina, two of which have subject matter related to North Carolina. However, neither has published a book specifically directed at the North Carolina market since 2000. Although the Publishers may have some contacts with North Carolina, the publication of four books by North Carolina authors a number of years ago, compared to approximately 100 books published by these defendant each year, is too tenuous to support general jurisdiction. Their books may find their way into North Carolina through the "stream of commerce," but their contacts with this state are not such as to approximate physical presence. Defendants' motion to dismiss is granted.

C.  Transfers As An Alternative To Dismissal

Pursuant to 28 U.S.C. § 1404(a), the court may transfer an action to any other district where it might originally have been brought "[f]or the convenience of parties and witnesses, in the interest

of justice." Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "Although its language suggests otherwise, section 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." In re Carefirst of Md., Inc., 305 F.3d 253, 255-56 (4th Cir. 2002).

Rather than dismiss his action, plaintiff asks the court to transfer it to the United States District Court for the District of Colorado under § 1404(a). The magistrate judge declined to recommend transfer, finding that plaintiff's action was barred under Colorado's one-year statute of limitations for libel actions. See Colo. Rev. Stat. § 13-80-103(1)(a).[4] Accordingly, the magistrate judge concluded that plaintiff's action could not originally have been brought in the District of Colorado, as required by § 1404(a) and § 1406(a).

Objecting to the magistrate judge, plaintiff for the first time argues that his action is timely under Colorado law pursuant to Colo. Rev. Stat. § 13-80-118, which provides that the statute of limitations is tolled during the time when a defendant "is out of [the] state and not subject to service of process or has concealed himself." The court is obliged to consider this newly raised argument, see United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992), but finds it to be without merit. As explained by Colorado courts, this provision does not toll the statute of limitations where a person moves out of the state but is still amenable to process. See, e.g., McGee v. Hardina, 140 P.3d

---

[4] The magistrate judge also found that Colorado's savings statute, see id. § 13-80-111, did not apply to the facts of this case. Plaintiff does not challenge that conclusion, and again the court does not find that the magistrate judge clearly erred with respect to this unchallenged aspect of his M&R.

10

165 (Colo. App. 2005); MacMillan v. Bruce, 900 P.2d 131 (Colo. App. 1995). Although Eastburn had moved from Colorado to Texas by the time this lawsuit was filed, she was still subject to service of process and had not concealed herself. The tolling statute cited by plaintiff does not apply.

Although plaintiff's action is untimely under Colorado law, it does not follow that his action would be untimely if it were transferred to the District of Colorado under § 1404(a), because "[a] transfer under § 1404(a) . . . does not change the law applicable to a diversity case." Ferens v. John Deere Co., 494 U.S. 516, 523 (1990). In Ferens, the Supreme Court held that an action timely filed in the District of Mississippi that was transferred on plaintiff's motion to the Western District of Pennsylvania did not become untimely under Pennsylvania law; instead, the Court concluded that the Mississippi statute of limitations continued to govern the action. See id. at 518-33. Likewise, if this court were to transfer this action to the District of Colorado pursuant to § 1404(a), North Carolina law would continue to apply.[5]

Unfortunately for plaintiff, transfer under § 1404(a) is not appropriate in this case. That provision governs transfer for "the convenience of parties and witnesses." Transfer under § 1404(a) is within the court's discretion, see Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991), but the court considers a number of factors in exercising that discretion, including:

> (1) [t]he plaintiff's initial choice of forum; (2) [t]he residence of the parties; (3) [t]he relative ease of access of proof; (4) [t]he availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

---

[5] North Carolina, like Colorado, provides for a one-year statute of limitations for libel actions. See N.C. Gen. Stat. § 1-54(3). This period is tolled while an action in federal court based on state substantive law is pending. See Clark v. Velsicol Chem. Corp., 110 N.C. App. 803, 807-08, 431 S.E.2d 227, 229 (1993). The magistrate judge noted that even if the statute of limitations in this action was tolled during the pendency of plaintiff's first suit in this court from November 12, 2008, until September 18, 2009, almost sixteen (16) months would have elapsed between the accrual of this defamation action and the commencement of this suit. But because defendants do not argue that this action is untimely under North Carolina law and plaintiff's motion to transfer under § 1404(a) is otherwise without merit, the court assumes, without deciding, that this action is timely under North Carolina law.

(5) [t]he possibility of a view [by the jury]; (6) [t]he enforceability of a judgment, if obtained; (7) [t]he relative advantages and obstacles to a fair trial; (8) [o]ther practical problems that make a trial easy, expeditious, and inexpensive; (9) [t]he administrative difficulties of court congestion; (10) [t]he interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) [t]he avoidance of unnecessary problems with conflict of laws.

Hardee's Food Sys., Inc. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998) (some alterations to formatting). The moving party bears the "heavy burden of showing that the balance of interests weighs strongly" in favor of transfer. Hardee's Food Sys., Inc. v. Beardmore, 169 F.R.D. 311, 317 (E.D.N.C. 1996).

In this case, the balance of these factors does not weigh in favor of the District of Colorado. Plaintiff contends that Eastburn wrote the manuscript for *Simon Says* in Colorado, that Eastburn currently resides there, and that some third-party witnesses also reside in that state. But other than the residence of one of the parties and the presence of some witnesses in Colorado, none of the other factors relevant to the § 1404(a) analysis point to the District of Colorado as a more appropriate venue. Transfer under § 1404(a) is therefore inappropriate.

Although plaintiff did not invoke § 1406(a), it appears that plaintiff's argument more appropriately arises under that provision than § 1404(a). As noted, § 1406(a) authorizes a court to transfer an action when "personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." In re Carefirst of Md., Inc., 305 F.3d at 255-56. But unlike with a transfer pursuant to § 1404(a), "[a] district court receiving a case under the mandatory transfer provisions of § 1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court." LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987). As the magistrate judge held, and as this court has confirmed upon

*de novo* review, plaintiff's action is not timely under the law of Colorado. Thus, plaintiff's lawsuit could not have originally been brought in the District of Colorado, see 28 U.S.C. § 1406(a) (limiting transfers to district in which a case "could have been brought"), and transfer to that district would be futile. See Johnson v. Gen. Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236, 242-43 (D.N.H. 2009) (noting that a court should dismiss rather than transfer an action if "transfer would be futile"). Accordingly, plaintiff's motion to transfer under § 1406(a), to the extent he has made such a motion, is denied.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full. Defendants' motion to dismiss for lack of personal jurisdiction (DE # 8) is GRANTED. Plaintiff's motion to transfer venue (DE # 18) is DENIED. All other pending motions are DENIED AS MOOT. The Clerk of Court is directed to close this case.

SO ORDERED, this the 25 day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

13